UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Alston, Chafin and Senior Judge Haley


JAMES McGRIFF

v.      Record No. 0872-18-3

CITY OF ROANOKE DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
DECEMBER 11, 2018


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(Thomas E. Wray, on brief), for appellant.  Appellant submitting on
brief.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Shannon L. Jones, Guardian *ad litem* for the minor
child, on brief), for appellee.  Appellee and Guardian *ad litem*
submitting on brief.


        James McGriff (father) argues that the circuit court erred in terminating his parental rights to

his child.  Upon reviewing the record and briefs of the parties, we conclude that the circuit court

did not err.  Accordingly, we affirm the decision of the circuit court.

BACKGROUND

        "On appeal, 'we view the evidence and all reasonable inferences in the light most

favorable to the prevailing party below, in this case the Department.'"  Farrell v. Warren Cty.

Dep't of Soc. Servs., 59 Va. App. 375, 386, 719 S.E.2d 329, 334 (2012) (quoting Jenkins v.

Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1180, 409 S.E.2d 16, 18 (1991)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Father and Loren Hunt (mother) are the biological parents of the child, J.M.[1] At the time of J.M.'s birth, father and mother were married, but they divorced when J.M. was approximately two years old. After father and mother separated, he infrequently visited with J.M., and then, father moved out of the area when J.M. was three years old.

In March 2016, mother was participating in drug court, stemming from a charge of selling leased property. She and her two children, J.M. and M.H., were living at the Rescue Mission. On March 18, 2016, she tested positive for drugs and was incarcerated for thirty days. Mother told the City of Roanoke Department of Social Services (the Department) that the children could not stay with their biological fathers because father was incarcerated and she recently had obtained a protective order against Eric Hunt. Mother indicated that a friend could care for the children while she was incarcerated. Mother also advised that J.M. was diagnosed with ADHD, oppositional defiant disorder (ODD), and sensory processing issues, and he was taking prescription medicine for his behavioral issues.

After speaking with mother's friend who agreed to care for the children, the Department transported J.M. and M.H. to the friend's home on March 18, 2016. At the time, J.M. was six years old, and M.H. was two years old. The Department visited the friend's home on March 21, 2016, and found that J.M. was "extremely hyperactive and defiant." Mother's friend informed the Department that she only could care for the children for a few more days because she did not have child care for the children while she was at work and the children required constant supervision. Mother did not have any other family or friends who could act as alternative placements, so on March 22, 2016, the Department obtained temporary legal custody of the children. The Department placed the children in separate foster homes because of J.M.'s behaviors toward M.H. The Roanoke City Juvenile and Domestic Relations District Court (the

---

[1] Mother has another minor child, M.H., whose biological father is Eric Hunt.

JDR court) adjudicated that J.M. was abused or neglected, and on May 17, 2016, it entered the dispositional order.

From October 28, 2015 until May 5, 2017, father was incarcerated for felony drug distribution and possession, conspiracy, and possession of a firearm. Although father was incarcerated, he wrote letters to the Department to inquire about J.M. Shortly after his release, on May 12, 2017, father contacted the Department, which informed him that to be able to assume custody of J.M., father had to participate in individual counseling, a substance abuse assessment, and a parenting course. The Department required father to obtain and maintain employment and housing, which he did.[2]

Although father had stable employment, he did not comply with the remainder of the Department's requests. The Department acknowledged that father's housing was appropriate for him, but was concerned that it might not have been appropriate for J.M. Father lived in a two-bedroom residence with someone he had met at Narcotics Anonymous. The Department explained that father's friend would have to submit to a background check and child protective services check. Father told the Department that the background checks were not necessary because he did not plan to stay at the residence long-term.

Father also told the Department that after he had been released from jail, he had not used drugs for approximately two years and had been a member of Narcotics Anonymous since 1991, so he did not believe that he needed the substance abuse assessment. Despite the Department explaining to father that, because of his criminal charges, it was concerned about the possibility of a relapse after he was released from jail, father never complied with the substance abuse assessment. The Department referred father to a specific parenting class with a "hands on portion," but the class interfered with father's work schedule. Instead, father completed a

---

[2] Stable employment and housing also were part of father's probation requirements.

different parenting class that he could coordinate with his work schedule, which did not have a "hands on portion." The Department also referred father to Family Services for individual counseling; however, father told the Department that he did not need counseling and refused to go.

The Department provided father with additional services, including visitation with J.M., which began after father was released from incarceration. J.M. did not want to visit father because he did not know father and had believed that his stepfather was his biological father. Although J.M. was "very hesitant" and anxious during the first visit with father, the visits slowly improved. The visitations were "essentially uneventful" because J.M. spent a lot of time watching videos on father's phone. Father tried to engage with J.M., but J.M. was not very responsive. After J.M. started visiting with father, the Department noticed that J.M.'s anxiety and hyperactivity increased. In August 2017, the Department had to intervene during a visit between father and J.M. because father made inappropriate statements to J.M. Father became "very frustrated" with the social worker and told her that she could not tell him how to parent and what to say to J.M. Meanwhile, J.M. became "visibly upset." Since father became so emotional, the Department ended the visit. Father went outside and "was just yelling and very loud and very angry and cursing," while the social worker took J.M. to the car.

On August 22, 2017, the JDR court denied the Department's petition to terminate father's parental rights and disapproved the foster care plan with the goal of adoption. The Department appealed the JDR court's rulings to the circuit court.

The parties appeared before the circuit court on January 24 and April 3, 2018. The Department presented evidence that when J.M. entered foster care, he "really struggled with any type of boundaries" and rules. J.M. continued his medication and seeing his previous doctor for medication management. Due to his foster care placement, J.M. switched schools and

participated in therapeutic day treatment services.  The Department also arranged for counseling for J.M., beginning in September 2016, and his therapist diagnosed him with post-traumatic stress disorder.  In June 2017, J.M.'s therapist met with father, and they discussed J.M. and parenting strategies.  J.M. did not react well after visiting with father, and J.M. regressed with some of his behavioral issues.

The Department stated that it was seeking termination of father's parental rights because father was incarcerated for over a year while J.M. was in foster care.  Then, once father was released from jail, he refused to participate in many of the services required by the Department.  The Department also was concerned that despite having consistent visitation, father and J.M. had "no connection."

Father testified that he did not trust the Department and its services.  He explained that he did not need to take a substance abuse assessment because he had been clean for years and was actively participating in Narcotics Anonymous meetings.  Furthermore, father testified that he did not need individual counseling, so he was not going to go.  He further explained that he could not go to the parenting class that the Department recommended because of his work hours, so he chose a different parenting class to attend.  Father regularly attended visitations until March 2018, when the Department stopped father's visits.  Lastly, father informed the circuit court that he had just paid a security deposit on his own one-bedroom apartment, but could qualify for a larger unit if necessary.  Father told the circuit court that he loved J.M. and wanted to take care of him.

At the conclusion of all of the evidence, the circuit court requested that the parties submit their closing arguments in writing, which they did.  On April 24, 2018, the circuit court issued a letter opinion finding that it was in J.M.'s best interest to terminate mother and father's parental

rights and approve the goal of adoption. On April 27, 2018, the circuit court entered final orders memorializing its rulings. This appeal followed.[3]

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558, 811 S.E.2d 835, 840-41 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190, 717 S.E.2d 811, 814 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)).

Father argues that the circuit court erred by terminating his parental rights pursuant to Code § 16.1-283(B) and (C)(2). Father admits that he did not comply with all of the Department's requests, but he emphasizes that he has a job and housing and participates in Narcotics Anonymous. He also contends that completing a parenting class, albeit not the one recommended by the Department, should have been sufficient.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

---

[3] Mother also appealed the circuit court's rulings. See Hunt v. City of Roanoke Dep't of Soc. Servs., Record No. 0811-18-3.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005).

The Department referred father to numerous services after he was released from jail. Father, however, chose not to participate in many of those services, including a substance abuse assessment, individual counseling, and a "hands on" parenting class. By not complying with these requirements, father had not substantially remedied the conditions that required the continuation of foster care for J.M.

At the time of the April 3, 2018 hearing, J.M. had been in foster care for more than two years. The Department's evidence proved that J.M. had special needs. His counselor testified that J.M. was "very sensitive to changes" and needed structure, a routine, and a "safe [and] stable home." His counselor opined that it was important for J.M.'s caregivers to "understand how to work with a child who has a trauma history and how to handle his tantrums, how to sort of provide kind and firm boundaries with him." Father acknowledged that he had not been involved in J.M.'s life for a number of years and was not aware of the trauma that he had experienced. Father was not in a position to care for J.M. at the time of the circuit court hearings. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 322, 746 S.E.2d 509, 522 (2013) (quoting Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990)).

Considering the totality of the evidence, the circuit court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2). "When a trial court's judgment is

made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1, 684 S.E.2d 219, 220 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating father's parental rights pursuant to Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.